UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| DELORIS A. GIBSON,<br><br>               Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>               Defendant. | Case No. 2:16-cv-01885-GMN-BNW<br><br>**REPORT AND RECOMMENDATION** |

The case involves review of an administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff Deloris A. Gibson's ("Plaintiff") application for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act. The court has reviewed Plaintiff's motion for reversal and remand (ECF No. 25), filed January 23, 2017, and the Commissioner's response and cross-motion to affirm (ECF Nos. 26 and 27), filed February 22, 2017. Plaintiff did not file a reply. This matter was referred to the undersigned magistrate judge on May 2, 2019 for a report of findings and recommendations under 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

**I.     BACKGROUND**

    **1.     Procedural History**

On March 1, 2012, Plaintiff applied for disability insurance benefits under Title II of the Act and supplemental security income benefits under Title XVI of the Act, alleging an onset date of December 1, 2008, which Plaintiff later amended to February 9, 2011. AR[1] 95. Plaintiff's claim was denied initially and on reconsideration. AR 135-39, 141-148. A video hearing was held before an Administrative Law Judge ("ALJ") on October 2, 2014. AR 45-72. On February

---

[1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 19).)

10, 2015, the ALJ issued a decision finding Plaintiff was not disabled. AR 23-38. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on June 6, 2016. AR 1-6. Plaintiff, on August 10, 2016, commenced this action for judicial review under 42 U.S.C. §§ 405(g). (*See* IFP App. (ECF No. 1).)

### 2. The ALJ Decision

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. AR 28-37. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of February 9, 2011 through the date of the decision. AR 28. At step two, the ALJ found that Plaintiff had medically determinable "severe" impairments of history of ischemic heart disease and degenerative disc disease. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 33. At step four, the ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except: she can lift and carry ten pounds occasionally and five pounds frequently; she can occasionally climb ramps and stairs; she can occasionally stoop, kneel, crouch, and crawl; she cannot climb ladders, ropes, and scaffolds; and she should avoid concentrated exposure to extreme heat, cold, and hazards (e.g., unprotected heights and dangerous machinery). *Id*. The ALJ found that Plaintiff can perform her past relevant work as a child support officer. AR 37. Accordingly, the ALJ concluded that Plaintiff was not under a disability at any time from February 9, 2011 through the date of the decision. *Id*.

## II. DISCUSSION

### 1. Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for

the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not

sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to the step two. Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see*

*also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[2]  If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made.  If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made.  20 C.F.R. § 404.1520(h).  If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments.  *See* 20 C.F.R. § 404.1520(e); see also SSR 96-8p.  In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.  20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p.  To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.  The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations.  *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1).  They are entitled to some deference so long as they are consistent with the Social Security Act and regulations.  *Bray*, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. In addition, the work must have lasted long enough for the individual to learn the job and perform a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she can do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

### 3. Analysis

#### a. Whether Plaintiff's physical impairments are severe

The ALJ determined that Plaintiff's diagnosed impairments of obesity, diabetes mellitus, essential hypertension, hyperlipidemia, hypothyroidism, gastrointestinal system disorder, and sleep apnea are slight abnormalities that do not have more than a minimal effect on Plaintiff's ability to work. AR 29. Plaintiff argues that the ALJ's determination that Plaintiff does not suffer from severe physical impairments is not supported by substantial evidence because the ALJ's decision generally fails to adequately consider the record as a whole. Plaintiff also argues that the ALJ decision fails to account for these impairments in the RFC calculation. The Commissioner responds that the ALJ properly determined Plaintiff's physical impairments as non-severe and properly considered the non-severe impairment's effects on the claimant's functioning.

It is claimant's burden to prove that she has a severe impairment, which is an impairment that significantly limits a claimant's ability to perform basic work activities and that is expected to result in death or last at least twelve months. *See* 20 C.F.R. § 404.1509, 404.1520(a)(4)(ii), 404.1521(a); *Bowen*, 482 U.S. at 146 n.5. The basic physical work activities include the ability to walk, stand, sit, lift, push, pull, reach, and carry or handle. SSR 85-28. The basic mental work activities include the ability to understand, remember, and carry out simple instructions; use judgment; respond appropriately to supervision, co-workers, and usual work conditions; and deal with routine changes. 20 C.F.R. § 404.1521(b)(3)-(6). A diagnosis alone does not establish severity. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, even though the ALJ thoroughly reviewed Plaintiff's medical records regarding her diagnosed obesity, essential hypertension, hyperlipidemia, hypothyroidism, gastrointestinal system disorder, and sleep apnea, he did not thoroughly review Plaintiff's medical records regarding her diabetes mellitus. The ALJ found that Plaintiff's diabetes mellitus "should be amenable to proper control by adherence to recommended medical management and medication compliance." AR 29. In a March 2013 evaluation, treating endocrinologist Dr. Shadi Abdelnour noted he would increase Plaintiff's dosage of Victoza to control her diabetes mellitus and would "see if she can tolerate that dose." AR 758. Other medications for Plaintiff's diabetes mellitus were discontinued due to side effects. AR 767. In May 2013, however, consultative examiner Dr. Michael Jacobs noted Plaintiff takes various medication for diabetes, including Victoza and Glipizide, AR 564, but found that control of her diabetes "has not been good." AR 567. In November 2013, Dr. Abdelnour found that Plaintiff's glucose readings "showed a wide range of glucose (125, 177, 114, 149)" and that even though Plaintiff's diabetes mellitus is "[i]mproving,"

it is "still not well controlled." AR 605, 607. Dr. Abdelnour further noted that he could not increase dosage of Glipizide because doing so could cause hypoglycemia and weight gain. AR 607, 758. In a subsequent March 2014 visit, Dr. Abdelnour noted Plaintiff's diabetes mellitus is "uncontrolled." AR 737.

The ALJ also found that Plaintiff had no significant problems with her vision, kidneys, hands, or feet. AR 29. However, in October 2012, treating physician Dr. Darren Rahaman referred Plaintiff for arterial studies relating to her bilateral leg cramps, AR 657, and in April 2013, treating physician Dr. Douglas Budde noted right hand pain and cramping, left thumb pain and cramping, and bilateral calve cramping at night. AR 647. In May 2013, Dr. Jacobs noted tenderness on the plantar surface of Plaintiff's right foot at the calcaneal area. AR 566. In July 2013, Dr. Budde noted pain to Plaintiff's lower right leg and left thumb. AR 638. In October 2013, Dr. Lee noted bilateral leg pain. AR 704. In November 2013, Dr. Abdelnour noted a tender toenail and referred Plaintiff to podiatry for evaluation. AR 728. In March 2014, Dr. Abdelnour noted Plaintiff's past medical history significant for chronic kidney disease. AR 735.

The ALJ further found conflicting evidence relating to whether Plaintiff suffered from neuropathy, citing that Dr. Jacobs found no neuropathy during his May 2013 examination, AR 567, Dr. Abdelnour noted no evidence of diabetic nephropathy during his November 2013 examination, AR 607, and treating physician Dr. Budde diagnosed Plaintiff with neuropathy in her lower right leg during his April 2013, July 2013, and August 2013 examinations. AR 647, 638, 637. Treating cardiologist Dr. John Lee also recommended in November 2013 that Plaintiff "be evaluated for neuropathy" because of her diabetes and leg pain. AR 683. On these facts, the court cannot conclude that substantial evidence supports the ALJ's finding at step two that Plaintiff's diabetes mellitus is non-severe. Accordingly, the court considers whether the ALJ erred. The ALJ's finding that Plaintiff's diabetes mellitus is non-severe could be considered a harmless error in light of the ALJ writing, in his step-two analysis, that he has "considered the functional limitations resulting from all of the claimant's medically determinable impairments, including those that are non-severe." AR 28-29. However, in determining Plaintiff's RFC, the ALJ does not demonstrate this analysis in the step-four discussion. *See* 20 C.F.R. §

404.1545(a)(2) ("If you have more than one impairment[, w]e will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not "severe," . . . when we assess your residual functional capacity."); *see also Hutton v. Astrue*, 491 Fed. Appx. 850, 850 (9th Cir. 2012). Instead, the ALJ focuses only on Plaintiff's severe impairments in his step-four analysis. Accordingly, the court finds that the ALJ did not properly evaluate the severity of Plaintiff's physical impairments and this was not harmless error.

### b. Whether Plaintiff's mental impairments are severe

The ALJ determined that Plaintiff's anxiety disorder and affective disorder do not cause more than a minimal limitation in her ability to perform basic work activities and are non-severe. AR 30. Plaintiff argues that the ALJ's determination that Plaintiff does not suffer from severe mental impairments is not supported by substantial evidence because the ALJ's decision generally fails to adequately consider the record as a whole. Plaintiff also argues that the ALJ decision fails to account for these impairments in the RFC calculation. The Commissioner responds that the ALJ properly determined Plaintiff's mental impairments as non-severe and properly considered the non-severe impairment's effects on the claimant's functioning.

It is a claimant's burden to prove that she has a severe impairment, which is an impairment that significantly limits a claimant's ability to perform basic work activities for at least a consecutive 12-month period. *See* 20 C.F.R. § 404.1509, 404.1520(a)(4)(ii), 404.1521(a); *Bowen*, 482 U.S. at 146 n.5. The basic physical work activities include the ability to walk, stand, sit, lift, push, pull, reach, and carry or handle. SSR 85-28. The basic mental work activities include the ability to understand, remember, and carry out simple instructions; use judgment; respond appropriately to supervision, co-workers, and usual work conditions; and deal with routine changes. 20 C.F.R. § 404.1521(b)(3)-(6). A diagnosis alone does not establish severity. *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

Step two is "a de minimus screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). "Thus, applying our normal standard of review to the requirements of step two, [the Court] must determine whether the ALJ had

substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

The Commissioner performs a special technique to evaluate mental impairments at steps two and three. 20 C.F.R. § 404.1520a. The special technique requires the ALJ to substantiate the presence of a medically determinable impairment using pertinent symptoms, signs, and laboratory findings, and then to rate the degree of functional limitation that results from the mental impairment in four broad categories: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 404.1520a(b)-(c). If the degree of limitation in the first three categories is none or mild, and the claimant has no episodes of decompensation of extended duration, then the claimant's mental impairment is not severe. *Id.* § 404.1520a(d)(1).

The ALJ thoroughly reviewed Plaintiff's medical records regarding her anxiety disorder and affective disorder, AR 30, and then conducted the special technique to evaluate Plaintiff's mental impairments. AR 30-32. Specifically, the ALJ explained, using the evidence in the medical record, why he felt that Plaintiff had only mild limitations in activities of daily living; social functioning; and concentration, persistence, or pace; and that she had experienced no episodes of decompensation. *Id.* The ALJ relied, in part, on the opinions submitted by non-examining state agency medical consultants. AR 32. In his application supporting Plaintiff being permanently disabled, treating physician Dr. Douglas Budde also opined that Plaintiff "does not have [a] psychiatric condition." AR 554. Considering the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's mental impairments are non-severe. However, the ALJ did not consider Plaintiff's non-severe mental impairments in his RFC analysis. Accordingly, the court finds that the ALJ did not properly evaluate the severity of Plaintiff's mental impairments.

### b. Whether the ALJ properly considered treating physicians' opinions

The ALJ determined that little weight would be granted to the opinions of treating physicians Drs. Douglas Budde and John Lee. Plaintiff argues that substantial evidence does not

1 support the ALJ's evaluation of the opinion evidence and that the ALJ failed to apply the
2 requisite factors under C.F.R. § 404.1527(c) in weighing the opinions of treating physicians Drs.
3 Budde and Lee.  The Commissioner responds that the ALJ properly considered opinion evidence
4 from treating physicians Drs. Budde and Lee by explaining why he attributed their opinions little
5 weight and identifying substantial evidence in the record.

6 A treating physician's opinion is given deference because he "'is employed to cure and
7 has a greater opportunity to know and observe the patient as an individual.'" *Morgan v.*
8 *Commissioner of the Social Security Administration*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting
9 *Sprague v. Bowen,* 812 F.2d 1226, 1230 (9th Cir. 1987)).  The medical opinion of a claimant's
10 treating doctor is given "controlling weight" so long as it is "well-supported by medically
11 acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other
12 substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).  When a
13 treating doctor's opinion is not controlling, it is weighted according to factors such as length of
14 the treatment relationship and the frequency of examination, the nature and extent of the
15 treatment relationship, supportability, and consistency with the record.  *Id*. § 404.1527(c)(2)-(6).
16 Greater weight also is given to the "opinion of a specialist about medical issues related to his or
17 her area of specialty."  *Id*.  § 404.1527(c)(5).

18 If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an
19 ALJ may "only reject it by providing specific and legitimate reasons that are supported by
20 substantial evidence."  *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008)
21 (quoting *Bayless v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).  The ALJ "can meet this
22 burden by setting out a detailed and thorough summary of the facts and conflicting evidence,
23 stating his interpretation thereof, and making findings." *Magallanes v. Bowen,* 881 F.3d 747, 751
24 (9th Cir. 1989) (quoting *Cotton v. Brown*, 799 F.2d 1403, 1408 (9th Cir. 1986).  For an ALJ to
25 "say that medical opinions are not supported by sufficient objective findings or are contrary to the
26 preponderant conclusions mandated by the objective findings does not achieve the level of
27 specificity our prior cases have required, even when the objective factors are listed seriatim."
28 *Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988).

1    When a treating and examining doctor rely on the same clinical findings, but differ only in
2    conclusions, the examining doctor's conclusions are not substantial evidence. *Orn v. Astrue*, 495
3    F.3d 625, 632 (9th Cir. 2007). Further, an ALJ is not entitled to reject a treating doctor's findings
4    "even where those responses were provided on a 'check-the-box' form, were not accompanied by
5    comments, and did not indicate to the ALJ the basis for the physician's answers." *Trevizo v.
6    Berryhill,* 861 F.3d 664, 683 n.4 (9th Cir. 2017).

   Here, treating physician Dr. Budde examined Plaintiff on at least ten occasions beginning in April 2012 through January 2014. In May 2013, Dr. Budde submitted a Discharge Application for Total and Permanent Disability and found that Plaintiff is permanently disabled; unable to prolong stand, walk, or lift; and unable to prolong sit as she must be able to get up and move periodically. AR 553-554. Treating cardiologist Dr. Lee examined Plaintiff at least nine times between December 2012 and January 2014. Examining physician Dr. Jacobs examined Plaintiff once in May 2013 with a handful of medical records, none of which were from Drs. Budde or Lee.[3]

   The ALJ accords little weight to treating physicians Drs. Budde and Lee, finding that the doctors provide, through their checklist-style forms, "only conclusions regarding functional limitations, without any rationale or explanation for these conclusions." AR 35-36. The ALJ, however, grants the opinion of consultative examiner and internal medicine specialist Dr. Jacobs partial weight because "[h]is opinion is consistent with those objective findings, although the basis for the lifting restrictions was not clearly explained." AR 35. Even though the ALJ found that Drs. Budde and Lee's conclusions stemming from their use of the Residual Functional Capacity Questionnaires are "not consistent with the internal medicine consultative examination,

---

[3] The records Dr. Jacobs had for review include "[a] Nevada Health Center record dated April 17, 2012 discussing her diabetes, hypothyroidism, hypertension, hyperlipidemia, coronary artery disease, status post percutaneous transluminal coronary angioplasty and stent placement in April 2012. He [sic] had a history of abnormal renal function. There is a UMC note from March 2012 because of chest pain. There is a note from UMC dated May 2012 on a total life care monitor for her blood pressure. A normal right groin ultrasound in February 2013. A record of a cardiac catheterization from January 2013 showed a patent stent in the left anterior descending artery with no evidence of any stent re-stenosis. Otherwise it showed angiographically normal coronary arteries and normal left ventricular function. A note from February 2013 from her primary care provider Darin Neuroman. This essentially discussed non-cardiac chest pain. April 2012 there was a UMC admission report for chest pain." AR 563-64.

and the assessed limitations are excessive when compared even to the author's own treatment notes," the ALJ did not point to anything in Drs. Budde and Lee's treatment notes that contradicted their opinions. AR 35-36. Further, the ALJ did not apply other appropriate factors under C.F.R. § 404.1527(c)(2)-(6) in determining the extent to which treating physicians Drs. Budde and Lee should be credited such as the length of the treating relationship, the frequency of examination, and the nature and extent of the treatment relationship. Accordingly, the court finds that the ALJ did not provide "specific and legitimate" reasons for granting little weight to the opinions of treating physicians Drs. Budde and Lee, and he did not apply the requisite factors under C.F.R. § 404.1527(c)(2)-(6) in weighing the opinions of the treating doctors.

### c. Whether the ALJ's RFC finding was proper and supported by substantial evidence

The ALJ determined that Plaintiff has the RFC to perform light work except that she can lift and carry ten pounds occasionally and five pounds frequently; she can occasionally climb ramps and stairs; she can occasionally stoop, kneel, crouch, and crawl; she can never climb ladders, ropes, and scaffolds; and she should avoid concentrated exposure to extreme heat, cold, and hazards such as unprotected heights and dangerous machinery. AR 33. Plaintiff argues that the ALJ failed to properly consider the combined impact of Plaintiff's obesity and her other impairments even though the ALJ deemed them non-severe. The Commissioner responds that the ALJ properly assessed Plaintiff's RFC because he expressly acknowledged his duty to consider her impairments, including those deemed non-severe.

RFC refers to the most an individual can do despite her limitations or restrictions. SSR 96-8p. In assessing a claimant's RFC, an ALJ must consider the combined effect of all of the claimant's medically determinable physical and mental impairments, whether severe or non-severe. 20 C.F.R. § 404.1545(a)(2), 20 C.F.R. § 416.945. The ALJ must also consider all the relevant medical evidence as well as other evidence, including subjective descriptions and observations of an individual's limitations by the individual, family, neighbors, friends, and other persons. *Id.* § 416.945(a)(3).

Here, the ALJ, in the step-two analysis, finds that he has "considered the functional limitations resulting from all of the claimant's medically determinable impairments, including those that are non-severe." AR 28-29. However, in the ALJ's step-four analysis, he does not discuss Plaintiff's non-severe impairments, and instead focuses only on Plaintiff's side effects from her prescribed pain medication, her severe impairments of ischemic heart disease and degenerative disc diseases, Plaintiff's daily activities, and Plaintiff's subjective functional ability (e.g., being able to walk approximately one block; being able to pay attention for a few minutes; difficulty squatting, bending, reaching, kneeling, and climbing stairs). AR 33-34. The ALJ's RFC analysis also includes a discussion on the opinions provided by examining physician Dr. Jacobs, non-examining medical consultants, and treating physicians Drs. Budde and Lee, including Drs. Budde and Lee's completed RFC Questionnaires, as they relate to Plaintiff's severe impairments. AR 35-36. The ALJ finds that in light of the partial weight attributed to the examining and non-examining medical consultants' opinions; the little weight granted to the treating physicians' opinions; and in light of Plaintiff's ability to drive, complete household chores, and take care of her 13-year-old niece, she possesses the requisite physical and mental capabilities to obtain and maintain employment. AR 34-36.

The ALJ conflated steps two and four by focusing solely on Plaintiff's severe impairments in his step-four RFC determination. For example, the ALJ's concluding sentence for his RFC analysis involving Plaintiff's ischemic heart disease reads, "Nevertheless, given the claimant's surgical history, I find that the claimant does have limitations from this impairment, and therefore is limited to work consistent with the residual functional capacity determined herein." AR 34. Similarly, the ALJ's concluding sentence for his RFC analysis regarding Plaintiff's degenerative disc disease reads, "Nevertheless, I find the claimant does have limitations from this impairment and, therefore, is limited to work consistent with the residual functional capacity determined herein." AR 35. Even though the ALJ discussed the opinions of the examining psychological consultant and the state agency medical consultants in his step-two assessment, he did not address them in his step-four RFC analysis. These statements, in conjunction with the ALJ's omission of Plaintiff's non-severe impairments from the RFC discussion, show that the ALJ impermissibly

relied on his step-two findings to determine that Plaintiff's non-severe impairments did not cause or contribute to her functional limitations. Accordingly, the court finds that the ALJ's failure to evaluate the impact of Plaintiff's non-severe mental and physical impairments in the RFC analysis was error under 20 C.F.R. §§ 404.1545(a)(2) and 416.945(a)(2).

### d. Whether the ALJ properly evaluated whether Plaintiff could perform her past relevant work

The ALJ found that Plaintiff could perform her past relevant work as a child support officer. Plaintiff argues that the ALJ failed to analyze and make specific findings regarding the physical and mental demands of Plaintiff's past work. The Commissioner responds that the ALJ properly obtained information relating to Plaintiff's past work and that the ALJ is not required to provide in its written decision his analysis and specific findings regarding the physical and mental demands of Plaintiff's past work.

An ALJ "has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v.* Heckler, 713 F.2d 441, 443 (9th Cir. 1989) (citation omitted). An ALJ must conduct a "careful consideration of the interaction of the limiting effects of the person's impairment(s) and the physical and mental demands of his or her PRW to determine whether the individual can still do that work." SSR 82-62. Because whether a claimant has the RFC to perform PRW is "an important and, in some instances, a controlling issue," an ALJ has a duty to develop the record relating to a claimant's past relevant work, including obtaining detailed information about strength, endurance, manipulative ability, mental demands, and other job requirements, before deciding whether a claimant has the functional capacity to perform this past work. *Id.* When a claimant has a mental or emotional impairment, "care must be taken to obtain a precise description of the particular job duties which are likely to produce tension and anxiety . . . ." *Id.* Similarly, if a claimant has physical impairments involving, for example, cardiovascular or gastrointestinal disorders, an ALJ must determine the stressful nature of the past relevant work to conclude whether the impairment is "compatible with the performance of such work." *Id.* Finally, if an ALJ finds Plaintiff to have the capacity to perform a past relevant job, his decision must contain the following specific findings of fact: (1) a

1  finding of fact as to the individual's RFC; (2) a finding of fact as to the physical and mental

2  demands of the past job or occupation; and (3) a finding of fact that the individual's RFC would

3  permit a return to his or her past job or occupation. SSR 82-62.

4  Here, Plaintiff submitted a work history report discussing her previous positions as a

5  caregiver, catering business owner, juvenile service assistant, adjunct instructor, caterer, assistant

6  manager, helper, and child support enforcement specialist. However, unlike the other listed

7  positions, Plaintiff's responses to her responsibilities as a child support enforcement specialist did

8  not discuss whether she lifted and carried items; if she supervised others; and how many hours

9  each day she walked, stood, sat, climbed, stooped, kneeled, crouched, crawled, handled, grabbed,

10 or grasped big objects, reached, wrote, typed, or handled small objects. AR 206-214. Instead,

11 Plaintiff's discussion on her child support enforcement specialist duties read "established child

12 support orders, enforce support order, modified order, attend court mediation, estb [sic] paternity,

13 enforce wage attachments." AR 248.

14 The ALJ asked Plaintiff to discuss her work history in the hearing. When discussing the

15 child support enforcement specialist position, the ALJ focused on how much time was spent in

16 the office and whether there was any field work involving "investigating the child's situation."

17 AR 60. Aside from asking Plaintiff whether she led the mediation conferences, the ALJ did not

18 obtain information relating to the position's requisite strength, endurance, manipulative ability,

19 and mental demands as required under SSR 82-62. Even though the ALJ advised Plaintiff's

20 counsel to ask Plaintiff questions relating to her alleged mental impairments, he did not obtain

21 from Plaintiff "a precise description of the particular job duties which are likely to produce

22 tension and anxiety . . . " as required under SSR 82-62. Further, the ALJ, in his written decision,

23 provided findings of fact to Plaintiff's RFC as well as to whether the Plaintiff's RFC would

24 permit her to return to her past job or occupation. AR 33-37. The ALJ, however, did not provide

25 a finding of fact as to the physical and mental demands of Plaintiff's past job or occupation as

26 required under SSR 82-62. Accordingly, the court finds the ALJ did not include the requisite

27 findings of fact under SSR 82-62, and thus did not properly evaluate whether Plaintiff could

28 properly perform her PRW.

## III. CONCLUSION AND RECOMMENDATION

Accordingly, IT IS HEREBY RECOMMENDED that Plaintiff's motion to remand (ECF No. 25) be granted and that the case be remanded for rehearing.

IT IS FURTHER RECOMMENDED that the Commissioner's cross-motion to affirm (ECF Nos. 26 and 27) be denied.

## IV. NOTICE

This report and recommendation are submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: August 26, 2019

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE